**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00109-RM-MEH

KAYLEE WILSON, individually and on behalf of similarly situated persons,

    Plaintiff,

v.

DFL PIZZA, LLC, MINUTEMAN PIZZA, LTD., TRI-CITY PIZZA, INC. and PINNACLE PIZZA, INC.

    Defendants.

---

**JOINT MOTION TO APPROVE COLLECTIVE ACTION**
**SETTLEMENT WITH MEMORANDUM IN SUPPORT**

---

The parties jointly move for approval of the settlement reached in this conditionally certified Fair Labor Standards Act ("FLSA") collective action. Some jurisdictions require court approval to effect a binding release in an FLSA settlement, *see Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982), though this District has recently rejected that requirement. *Drollinger v. Network Global Logistics, LLC*, Case No. 16-cv-304 (D. Colo. Aug. 17, 2018), Dkt. 207 (denying motion to approve FLSA settlement as moot and rejecting *Lynn's Foods*). Because the law in this District is unclear, to be safe, the parties respectfully request that the Court approve the parties' settlement. A copy of the parties' Settlement and Release Agreement ("Settlement Agreement") is attached hereto as Ex. 1-A. A copy of the notice to the Plaintiffs regarding the material settlement terms is attached as Ex. 1-B. A proposed Order is attached hereto as Ex. 2.

WHEREFORE, the parties respectfully request that the Court enter an Order granting this motion and approving the parties' settlement.

## MEMORANDUM IN SUPPORT

### Overview

Plaintiffs in this FLSA collective action are delivery drivers at Defendants' Domino's Pizza stores. Plaintiffs use or used their own vehicles to make deliveries for the benefit of Defendants and their customers. Plaintiffs allege that Defendants under-reimbursed their delivery drivers for the automotive expenses they incurred to such an extent that their unreimbursed business expenses reduced their wages below the federal minimum wage.

With the precedent of numerous similar cases preceding this one, counsel for the parties discussed settlement of this case during the parties' Rule 26(f) planning meeting and structured the scheduling order to provide for notice to all potential class members, the exchange of payroll and delivery data for all Opt-In Plaintiffs, and subsequent settlement discussions.

After the Court conditionally certified the case as a collective action pursuant to the parties' stipulation, a total of 215 of Defendants' delivery drivers, including Named Plaintiff Wilson, filed opt-in forms to assert their claims in this case. On August 2, 2018, the parties mediated for a full day with an experienced employment mediator, Adrienne Fechter. However, that mediation failed to result in a settlement. Through subsequent direct negotiations, the parties were finally able to achieve a settlement on August 8, 2018, that will provide substantial relief to the Opt-In Plaintiffs.

The settlement is a fair and reasonable compromise of a *bona fide* dispute. It creates a Settlement Fund, as set out in the Settlement Agreement, that will be paid out to the Named Plaintiff and the Opt-In Plaintiffs. The Settlement Fund will be fairly allocated to Plaintiffs based on the total number of miles they drove to perform their jobs.

**Facts and Procedural History**

On January 15, 2018, Plaintiff Kaylee Wilson filed her Complaint. On March 2, 2018, Plaintiff Wilson filed her Amended Complaint against Defendants asserting a minimum wage claim under the FLSA as a collective action under 29 U.S.C. §216(b). She claimed that Defendants so under-reimbursed their pizza delivery drivers for the vehicle expenses incurred delivering pizzas that their net wages fell below the requisite minimum wage (nominal wages – unreimbursed vehicle costs = subminimum net wages). (Doc. 16).

On March 2, 2018, after substantial negotiations, the parties filed a joint motion stipulating to conditional collective action certification and asking the Court to approve the parties' proposed Notice to the class (Doc. 17), and on March 14, 2018 the Court granted that motion (Doc. 20). Plaintiff then mailed the Court-approved notice to putative class members. The notice advised those who joined this case of the terms and conditions under which they were joining, including the fact that they were designating Plaintiff Wilson to make decisions on their behalf and to approve a settlement offer from the Defendants:

> If you choose to join this lawsuit, … you will be bound by any ruling, settlement or judgment, whether favorable or unfavorable, on the claims asserted. You will also be bound by, and will share in, to the extent appropriate, any settlement of the claims that may be reached on behalf of the Class. By joining this lawsuit, you designate the Named Plaintiff as your representative, and to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit. While this suit is pending, you may be required to submit documents and written answers to questions and to testify under oath at a deposition, or testify under oath at a hearing. The law prohibits Defendants from retaliating against you for participating in this Lawsuit.

Declaration of Rick Paul, Ex. 1, ¶3 ("Paul Decl.").

The notice also advised:

> If you choose not to join this lawsuit, you will not be directly affected by any judgment or settlement rendered in this lawsuit, whether favorable or unfavorable to the opt-in plaintiffs.

*Id.* at ¶4. Additionally, to join the case, putative plaintiffs were required to file a consent to join form. The consent form approved by the Court provided:

> I hereby consent to join this action against DFL Pizza, LLC, Minuteman Pizza, Ltd., Tri-City Pizza, Inc. and Pinnacle Pizza, Inc., and any related entities, in this or any subsequent action. I designate the Named Plaintiff to make all decisions on my behalf concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and costs, and all other matters pertaining to this lawsuit. For purposes of this lawsuit, I choose to be represented by PAUL LLP and Weinhaus & Potashnick, and other attorneys with whom they may associate.

*Id.* at ¶5. A total of 215 individuals, including Ms. Wilson, filed consents to join this lawsuit.

By agreement reached during the parties' Rule 26(f) conference and initial settlement discussions, the parties exchanged a significant amount of discovery, including delivery, mileage and reimbursement records for each Opt-In Plaintiff during the recovery period. All this information was used to evaluate the parties' claims and defenses. After careful analysis of this information, counsel for the parties, along with a representative of Defendants, negotiated a settlement through a day-long mediation held on August 2, 2018, followed by subsequent direct negotiations between counsel. The future risk to both sides provided the appropriate incentive for both sides to discuss a reasonable compromise of this case.

Plaintiffs' counsel have disseminated a notice of settlement terms to all Plaintiffs, which comports with the Court's prior Order in *Nelson v. Team Wow, LLC, et al.,* Case No. 1:16-cv-02825-RM-NRN (D. Colo. May 1, 2018) (Doc. 86), and counsel afforded Plaintiffs a month to object to the settlement. After that notice, no Plaintiff has objected.

**Settlement Terms**

The Settlement Agreement contains the terms of the payments to the Opt-In Plaintiffs for the Court's review. The Agreement requires Defendants to create a Settlement Fund that will provide Plaintiffs the equivalent of an increased reimbursement rate for each delivery made in exchange for a release of their wage and hour claims under state and federal law. The Settlement Fund will be distributed based on the number of deliveries performed by each Opt-In Plaintiff during the applicable limitations period. The Settlement provides for a modest service award to the Named Plaintiff, who was instrumental in initiating and pursuing this case, and she worked diligently with counsel to investigate the case and further the litigation, all for the benefit of those delivery drivers who will recover under this settlement. Moreover, the Named Plaintiff faithfully advocated for the interests of all Opt-In Plaintiffs during every round of a full-day mediation and subsequent direct negotiations. Notably, this is not a claims-made settlement: all monies from the Settlement Fund will be paid out. Attorneys' fees and costs will be paid out of the Settlement Fund.

All 215 Plaintiffs received written notice of the settlement, a true and correct copy of which is attached as Ex. 1-B, which included their estimated settlement awards, the amount of the attorneys' fee and service award sought, and a summary of all material terms identified by the Court in its May 1, 2018 Order issued in *Nelson,* Case No. 1:16-cv-02825-RM-NRN (D. Colo. May 1, 2018) (Doc. 86). Not a single Plaintiff has objected to the settlement or its terms.

**Argument**

**I. The Court Should Grant Final Certification of this Case to be Settled as a Collective Action**

The FLSA provides "a private right of action for one or more employees to bring an action against their employer to recover unpaid wages or overtime compensation on behalf of himself or themselves and other employees similarly situated." *In re Chipotle Mexican Grill, Inc.*, 2017 WL 4054144, at *1 (10th Cir. Mar. 27). Under the two-step "ad hoc" approach, "a court typically makes an initial notice stage determination of whether plaintiffs are similarly situated," applying a fairly lenient standard. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (quotation marks and citation omitted). Then, after discovery, the court makes a second similarly-situated determination, applying a stricter standard, where the court considers "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1102-03 (quotation marks and citation omitted).

For purposes of obtaining approval of the Settlement Agreement only, Plaintiffs move for, and Defendants conditionally consent to, final collective action certification.[1] Even

---

[1] Defendants' conditional consent to final collective action certification is made for purposes of obtaining Court approval of the settlement only and thus is conditioned on obtaining a final and non-appealable order granting this Joint Motion to Approve Collective Action Settlement and approving the terms of the Settlement Agreement in full. If the Court does not grant this Joint Motion in full and enter an Order approving the terms of the Settlement Agreement in full, including but not limited to approving the confidentiality provisions and the parties' mutual request to keep parts of the Agreement redacted and confidential, then Defendants' conditional consent to final collective action certification is not satisfied and/or any such consent is withdrawn, and the collective action shall not be deemed as finally certified, and Defendants reserve the right to object to and oppose final collective action certification, including their right to conduct discovery and file and oppose any motions related to final collective action certification. Defendants' consent to a settlement class for purposes of settlement only, as set forth above, is consistent with the procedure typically used in Rule 23 class actions. At all times and in entering into the Settlement Agreement, Defendants denied Plaintiffs' allegations and the Agreement expressly provides that

without Defendants' consent, Plaintiff contends that final collective certification would be appropriate, as demonstrated by the fact that five similar pizza delivery driver cases, one in this District, were all certified under Fed. R. Civ. P. 23, using the same or higher standard required for final certification under the FLSA. *McFarlin v. Word Enters., LLC,* 2017 U.S. Dist. LEXIS 164968, *1-13 (E.D. Mich. Oct. 5); *Perrin v. Papa John's Int'l., Inc.,* 2013 WL 6885334, at *1 (E.D. Mo. Dec. 31); *Bass v. PJCOMN Acq. Corp.,* 2011 WL 2149602, at *1 (D. Colo. June 1); *Oregal v. PacPizza, LLC,* Case No. C12-01454 (Sup. Ct. of Contra Costa Cnty. May 8, 2014) (Ex. 3); *Behaein v. Pizza Hut, Inc.,* Case No. BC541415 (Sup. Ct. of L.A. Cnty. Jul. 15, 2015) (Ex. 4). In addition, final collective certification for settlement purposes was granted by this District in *Gassel v. American Pizza Partners*, Case 1:14-cv-00291-PAB-NYW (Doc. 116) (Aug. 24, 2016) in a case involving nearly identical facts.

Plaintiffs allege that the facts supporting certification in *McFarlin, Bass, Perrin, Oregal and Behaein* exist here as well, including:(1) Plaintiffs worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers; (2) they delivered pizza and food items using automobiles not owned or maintained by Defendants; (3) Defendants required them to maintain these automobiles in a safe, legally-operable, and insured condition; (4) they incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants; (5) they were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies; (6) they were subject to the same pay policies and practices of

---

Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiff and/or the Opt-In Plaintiffs, individually or collectively, all such liability being expressly denied. (Settlement Agreement ¶3.4).

Defendants; (7) they were subject to the same delivery driver reimbursement policy; (8) they were reimbursed similar set amounts of automobile expenses per delivery; and (9) they were paid at or near the federal minimum wage before deducting unreimbursed business expenses. (Doc. 13, ¶¶ 16-19).[2] In *Nelson,* this Court found such contentions, along with the record, sufficient under the *Thiessen* factors, and thus granted final certification. *Nelson,* Doc. 86, at 5-6.

## II. This Settlement Meets the Criteria for Approval of a Collective Action Settlement

As the Court previously observed, "[c]ourts have held that settlement of FLSA actions such as this one must or may require court approval." *Nelson,* Doc. 86, at 3 (citing *Cooper v. OFS2 Deal 2, LLC,* 2016 WL 1071002, *2 (D. Colo. Mar. 17); *Baker v. Vail Resorts Mgmt. Co.,* 2014 WL 700096, *1 (D. Colo. Feb. 24)).[3] "Approval may be granted when: (1) the FLSA settlement is reached as a result of bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Id.* (citing *Cooper,* 2016 WL 1071002, at *2; *Baker,* 2014 WL 700096, at *1). "In addition, the 'Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power.'" *Id.* (quoting *Baker,* 2014 WL 700097, at *2 (citing *Dees v. Hydradry, Inc.,* 706 F.Supp.2d 1227, 1244 (M.D. Fla. 2010)). "Finally, before approval of any settlement may be had, final collective action certification may be required, as well as notice to opt-in plaintiffs of

---

[2] Defendants do not admit – and expressly deny – all of these allegations and reserve the right to litigate and contest certification if this Joint Motion to Approve Collective Action Settlement in not granted in full.

any settlement and an opportunity to object." *Id.* (citing *Ostrander v. Customer Engineering Servs., LLC,* 2018 WL 1152265, *2 (D. Colo. Mar. 5); *Davis v. Crilly*, 2018 WL 1010941, at *1-2, -- F. Supp. 3d --- (D. Colo. Feb. 22)).

### III. This Settlement Meets the Criteria for Approval of a Collective Action Settlement

Court-approval of FLSA settlements hinge on finding that the settlement is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Cooper v. OFS2 Deal 2, LLC*, 2016 WL 1071002, *2 (D. Colo. Mar. 17). Courts in this Circuit have approved similar settlements in FLSA collective actions on behalf of pizza delivery drivers. *See, e.g.*, *Gassel v. American Pizza Partners*, Case 1:14-cv-00291-PAB-NYW (Doc. 116) (Aug. 24, 2016) (pizza delivery driver case); *Smith v. Pizza Hut, Inc.,* Case No. 1:09-cv-01632-CMA-BNB (D. Colo. Mar. 26, 2015) (Doc. 466) (pizza delivery driver case); *Darrow v. WKRP Mgmt., LLC,* Order Granting Approval of Settlement, Case No. 1:09-cv-01613-CMA-BNB (D. Colo. Sept. 16, 2012) (Doc. 201) (pizza delivery driver case). This Court should readily conclude the parties' settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

#### A. The Proposed Settlement Is the Product of Contested Litigation.

The proposed settlement is the product of contested litigation. In the operative Complaint, Plaintiff Wilson alleged in detail Defendants' wage and expense reimbursement practices. During discussions between counsel and in settlement negotiations, Defendants adamantly denied all of the material allegations.

Plaintiffs' Counsel have litigated or arbitrated over 50 similar cases on behalf of pizza delivery drivers of numerous corporate and franchise pizza companies across the country for over 9 years. Defendants' Counsel likewise have litigated numerous FLSA collective

actions across the country, including delivery driver cases involving claims similar to the ones alleged in this case. They knew that the litigation in those cases was contested, and, in the *Smith v. Pizza Hut* case in this District, lasted six and a half years, including disputes over class certification, expert discovery, and cross-motions for summary judgment. Thus, the settlement of this contested lawsuit was in part the product of years of hotly contested, protracted, and expensive litigation in other cases.

Given their familiarity with the key factual and legal issues in the case, the parties were able to focus on the most-significant contested issues in the case, identify the critical data needed to calculate alleged damages, and efficiently reach a fair and reasonable settlement. Further, through experience, Plaintiffs' Counsel knew what data existed and was necessary to analyze to determine a fair and adequate settlement, thus considerably expediting potentially extensive discovery. Defendants cooperated by providing the requested data without requiring formal discovery. Defendants continue to contest the merit of Plaintiffs' claims and theories, the factual assumptions underpinning their under-reimbursement claims, and the propriety of final conditional certification, among other issues raised in this litigation, but have consented to final certification for settlement purposes only. Further, Defendants agreed to the terms of the Settlement Agreement to avoid the time, expense, and uncertainty of continued litigation.

### B. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.

#### 1. A *Bona Fide* Dispute Existed Between the Parties.

Plaintiff alleged that Defendants violated the FLSA because they failed to pay their drivers minimum wage, after accounting for un-reimbursed vehicle expenses. Defendants deny Plaintiff's allegations and contend that their reimbursement policy reasonably

approximated their delivery drivers' vehicle expenses and that their drivers have always earned at least minimum wage.

If Plaintiff's allegations ultimately proved correct, Defendants would be faced with the prospect of a substantial monetary verdict, as well as an obligation to pay legal fees and costs incurred by Plaintiff to prosecute the case through trial. If Defendants' arguments proved correct, then Plaintiff and the Opt-In Plaintiffs would obtain no recovery of any kind. As explained in Section III.A. above, notwithstanding the parties' ability to reach a settlement relatively early in the litigation, the Court should readily conclude a *bona fide* dispute between the parties existed given the extensive history of related litigation brought by Plaintiffs' Counsel on behalf of delivery drivers. (Ex. 1, ¶¶ 6-7.)

Indeed, the Court found a *bona fide* dispute between the parties based on a similar record in a similar case. *See Nelson,* Doc. 86, at 6-7.

### 2. The Proposed Settlement Is Fair and Reasonable.

"'To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales.'" *Nelson,* Doc. 86, at 7 (quoting *Baker v. Vail Resorts Mgmt. Co.,* 2014 U.S. Dist. LEXIS 22812, at *5 (D. Colo. Feb. 24, 2014)). The Court considers several factors when evaluating the fairness of a settlement, including: "(1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (quoting *Baker*, 2014 U.S. Dist. LEXIS 22812, at *5-6 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314

F.3d 1180, 1188 (10th Cir. 2002))); *see Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (evaluating fairness of agreement under Fed. R. Civ. P. 23(e)(1)(C)).

### a. The Parties Fairly and Honestly Negotiated the Settlement.

The parties are represented by competent and experienced legal counsel with a wealth of expertise in FLSA collective action litigation, including delivery driver claims like this one. The settlement was the product of ongoing fair, honest, arm's-length negotiations, including a day-long in-person mediation followed by direct negotiations spanning the following week. The proposed settlement resulting from these negotiations provides meaningful monetary relief to all of the Plaintiffs, as well as eliminating significant costs and inherent risks both sides would bear if this litigation continued to trial. Under these circumstances, a presumption of fairness should attach to the proposed settlement. Under similar circumstances, the Court found that the settlement in *Nelson* was the product of ongoing fair, honest, arm's-length negotiations between experienced counsel, aided by an experienced mediator. *Id.*, Doc. 86, at 7.

### b. Serious Issues of Law and Fact Exist That Place the Ultimate Outcome of the Litigation in Doubt.

This case involves complex and serious issues of law and fact that would have necessitated lengthy litigation, and which placed the ultimate outcome in doubt, if the case was not resolved by mutual agreement. The uncertainty of the ultimate outcome of this litigation is underscored by *Smith v. Pizza Hut, Inc.*, in which, after several years of litigation, the court denied the parties' motions for summary judgment. Further, none of the similar pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial would be expert intensive and costly. Plaintiffs would need to provide documentary evidence, lay testimony, and expert

testimony sufficient to establish liability and damages for all Plaintiffs. And, regardless of the outcome at summary judgment and trial, post-judgment appeals would be likely. In short, there are serious questions of law and fact that put the ultimate outcome of this contentious, complex, and expensive litigation in doubt, which weighs heavily in favor of approving the proposed settlement. Under similar circumstances, the Court found in *Nelson* that there are complex and serious issues of law and fact that would have necessitated lengthy litigation, and which placed the ultimate outcome in doubts, if the parties had not resolved the case by mutual agreement. *Id.*, Doc. 86, at 7.

### c. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.

The parties strongly disagree about the merits of Plaintiffs' claims, the viability of Defendants' defenses, and the likely amount of a jury verdict. If litigation continues, Plaintiffs would face many obstacles, including: (i) Defendants' opposition to a motion seeking final collective action certification; (ii) Defendants' motion for summary judgment, (iii) *Daubert* motions, (iv) a decertification motion; (v) a jury trial (if the case is not resolved by dispositive motion); and (vi) appeal (even if they prevail in District Court). Further, even if Plaintiffs prevailed on liability and their motion for final certification, Plaintiffs faced Defendants' arguments against both the nature and extent of damages.

The proposed settlement brings substantial value to each of the Plaintiffs now. Although the recovery in this case at trial might be greater than sums received under the Settlement Agreement, it also might be less, or nothing at all. For instance, Defendants contend that their reimbursement rates fully compensate drivers' automotive expenses. If the Court (at summary judgment) or jury (at trial) agrees with Defendants on this *bona fide* dispute, Plaintiffs would likely recover nothing at all.

In the face of these material disputes, it is significant that this proposed settlement brings Plaintiffs substantial monetary value *now*, not years from now, and provides certainty regarding the outcome. The certainty and immediacy of the proposed settlement payments easily outweigh the mere possibility of future relief after protracted and expensive litigation. *See In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future"). "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* (quoting *State of West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743 (S.D.N.Y.1970). Under similar circumstances, the Court found in *Nelson* that the value of an immediate recovery outweighs the mere possibility of future relief after expensive and time consuming protracted litigation. *Id.*, Doc. 86, at 7-8.

### d. The Settlement Award Will Be Distributed in a Fair and Reasonable Manner.

Plaintiffs submit that the proposed settlement provides for a fair and reasonable distribution of the settlement award. Plaintiffs developed the proposed plan to allocate the settlement proceeds based on the number of miles driven by each Opt-In Plaintiff to perform their jobs for Defendants during the longest-possible recovery period. Defendants do not oppose Plaintiffs' proposed distribution.

### e. The Settlement is Fair and Reasonable in the Judgment of the Parties.

The parties reviewed and analyzed comprehensive delivery, mileage and vehicle reimbursement data produced by the Defendants in this case in making an informed assessment of the proposed settlement. The fairness, reasonableness, and adequacy of

the proposed settlement is evidenced by the fact that all 215 Plaintiffs received written notice of the settlement, including their estimated settlement awards and a summary of all other material terms, including confidentiality, and not a single Plaintiff objected. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Oppenlander*, 64 F.R.D. at 624. Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the parties' counsel believe the settlement is fair, reasonable, and adequate. The parties respectfully suggest this Court should conclude the proposed settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the settlement.

### 3. The Proposed Settlement Does Not Undermine the Purpose of the FLSA.

To determine whether the proposed settlement is consistent with the purpose of the FLSA, the Court should consider the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1245-46 (M.D. Fla. 2010). As explained below, there is no question that the proposed settlement furthers, rather than undermines, the purpose of the FLSA.

First, all current and former delivery drivers employed by any of the Defendants at any time within the limitations period received a Court-approved notice about this lawsuit, the specific claims alleged in the lawsuit, their rights under the FLSA, and their right to either join and become a party plaintiff in this lawsuit or file their own lawsuit. (Doc. 31-1).

Obviously, this settlement is not an attempt at a cover up or to keep these employees from learning about the FLSA.

Second, it is unlikely that plaintiffs' circumstances will reoccur. Plaintiffs' counsel have observed that similar claims and / or settlements have influenced other pizza delivery companies to switch from a per-delivery reimbursement system to a per-mile reimbursement system to ensure that all drivers are being reimbursed for all miles actually driven.

Third, Defendants do not have a history of FLSA litigation against them, nor of Department of Labor investigations. Defendants reimbursed their delivery drivers using a per-delivery method designed to cover their operating costs, as was standard in the industry, for many years without any legal claims or allegations that there was anything wrong with it. And, Defendants are now on notice of the issues their drivers have with their reimbursement system.

Finally, as mentioned above, Opt-In Plaintiffs have been apprised of all material terms of the settlement, including the confidentiality terms which concerned the Court in *Nelson v. Team Wow, LLC, et al.,* Case No. 1:16-cv-02825-RM-NRN (D. Colo. May 1, 2018) (Doc. 86). *See* Ex. 1-B at 2. More than 30 days after dissemination of the Notice, not a single Plaintiff has objected to any settlement term.

### 4. A Modest Service Award is Warranted.

The Settlement provides for a modest $2,500.00 service award to the Named Plaintiff, who was instrumental in pursuing this case, and worked with counsel to investigate the case and further the litigation, all for the benefit of those delivery drivers who will recover under this Settlement.

The time and dedication that a named plaintiff devotes to a lawsuit that inures to the common benefit of others warrants a service award above and beyond what the typical opt-in plaintiff is receiving. *Whittington,* 2013 U.S. Dist. LEXIS 161665, *23-24 (awarding $7,500 service award to named plaintiff); *Green*, Order of Final Approval of Settlement Agreement and for Entry of Final Judgment (awarding $7,500 service awards to each of the named plaintiffs); *Darrow*, Order Granting Approval of Settlement (awarding $3,000 service award to named plaintiff).

Named Plaintiff Kaylee Wilson substantially assisted counsel in achieving this settlement on behalf of all Opt-In Plaintiffs and should receive a service award. Ms. Wilson was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiffs' counsel. She sought and retained counsel, filed this case, provided information necessary to prosecute the case, and had numerous phone calls with counsel. There is no question that the other class members have substantially benefited from her actions. Ms. Wilson also participated by telephone throughout the settlement efforts, and she consulted with Plaintiffs' Counsel during each round of negotiations. Without her efforts, this case would not have been brought and this settlement would not have been achieved. *See* Ex. 1, Paul Decl., ¶9. In light of these efforts, payment of a $2,500.00 service award is amply justified. Defendants do not oppose the requested service award.

The Court found that a $2,500.00 service award was appropriate in *Nelson* because Mr. Nelson, just like Ms. Wilson, "was instrumental in bringing and pursuing this case, [] in assisting counsel [and h]is actions provided substantial benefit to the Opt-in Plaintiffs*."* *Id.*, Doc. 86, at 8.

**IV. Notice and Opportunity to Object**

All 215 Plaintiffs received written notice of the settlement, including their estimated settlement awards and summary of all other material terms. Based on the Court's guidance in *Nelson,* the notice further specifically advised the Plaintiffs of (1) the Settlement Agreement's confidentiality provision, (2) that "all payments made to Opt-in Plaintiffs in resolution of their claims in this Litigation will not be considered for purposes of calculating, or recalculating, benefits provided by Defendants under the terms or conditions of any benefits plan," (3) that the "Opt-In Plaintiffs shall be solely and exclusively responsible for all taxes, interest and penalties, if any, of any nature, owed with respect to any payment received by them under this Agreement and will indemnify and hold Defendants and Plaintiffs' Counsel harmless from and against any and all taxes, penalties, and interest of any nature assessed as a result of an Opt-In Plaintiff's failure to timely and properly pay such taxes," (4) that "Plaintiff's Counsel and the Named Plaintiff, on behalf of the Opt-In Plaintiffs, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have against Defendants for attorneys' fees, costs, or expenses associated with this Litigation…," and (5) the attorney's fees Plaintiffs' counsel seeks. *Id.*, Doc. 86, at 10. More than 30 days after dissemination of the Notice, not a single Plaintiff has objected to any settlement term.

**V. Fair and Reasonable Attorney's Fees**

Plaintiffs' counsel has contemporaneously filed their Motion for Attorneys' Fees and Costs. For the reasons stated therein, the agreed-upon attorney's fees and costs are reasonable.

**Conclusion**

This settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the parties under the FLSA. The parties investigated and analyzed the facts and law and reached a reasonable settlement given the risk to which each side was exposed. The settlement is fair, reasonable, and adequate, and provides class members with significant relief. All Plaintiffs have now been fully advised of all settlement terms that the Court previously found should be included in the notice of settlement. For these reasons, and those set forth above, Plaintiffs respectfully request that the Court approve the settlement.

Dated:   September 28, 2018                     Respectfully submitted,

| | |
|---|---|
| **PAUL LLP** | **FISHER & PHILLIPS LLP** |
| */s/ Richard M. Paul III* | */s/ Kathleen McLeod Caminiti* |
| Richard M. Paul III | Kathleen McLeod Caminiti |
| 601 Walnut Street, Suite 300 | 430 Mountain Avenue, Suite 303 |
| Kansas City, Missouri 64106 | Murray Hill, New Jersey 07974 |
| Telephone:  (816) 984-8100 | Telephone: (908) 516-1062 |
| Rick@PaulLLP.com | kcaminiti@fisherphillips.com |
| | |
| **WEINHAUS & POTASHNICK** | Susan M. Schaecher |
| Mark A. Potashnick | 1801 California Street, Suite 2700 |
| 11500 Olive Blvd., Suite 133 | Denver, Colorado 80202 |
| St. Louis, Missouri 63141 | Telephone: (303) 218-3650 |
| Telephone:  (314) 997-9150 | |
| markp@wp-attorneys.com | |
| | |
| **Attorneys for Plaintiffs** | **Attorneys for Defendants** |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on September 28, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Richard M. Paul III*