# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:18-cv-00109-RM-MEH

KAYLEE WILSON, individually and on behalf of similarly situated persons,

        Plaintiff,

v.

DFL PIZZA, LLC, MINUTEMAN PIZZA, LTD., TRI-CITY PIZZA, INC. and
PINNACLE PIZZA, INC.

        Defendants.

---

## PLAINTIFFS' APPLICATION FOR FEES, COSTS AND EXPENSES

---

### INTRODUCTION

Foregoing the comfort and security of working for clients who can afford to pay their attorneys by the hour, Plaintiffs' Counsel represent low wage hourly workers on a fully contingent fee basis. Sometimes that results in recovering no fees, sometimes it results in recovering some of the fees incurred, and sometimes it results in a fee equal to or exceeding an hourly rate. When a fee is paid, it is nearly always long-delayed from working on an hourly basis. Plaintiffs' Counsel also advance case expenses because such expenses would otherwise present a barrier to enforcing their rights. Here, Plaintiffs' Counsel obtained a good result for their clients and now request one-third of the Settlement Fund as attorneys' fees, plus $8,365.87 for their costs and expenses incurred to date. This request is a standard fee request for cases of this type and will not result in an excessive fee given the work performed, the risks assumed, and the result reached. In sum, Plaintiffs' Counsel have earned the fee requested in this fee application.

## I.   Plaintiffs' Counsel Should Be Awarded One-Third of the Common Fund as Their Attorneys' Fee

The Settlement Agreement with Defendants, if approved, will create a common fund of $325,000.00 to compensate opt-in Plaintiffs for their minimum wage claims asserted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Pursuant to the negotiated Settlement Agreement and this Court's authority under 29 U.S.C. § 216(b), Plaintiffs' Counsel seek an award of one-third of the common fund as their fees.

### A. The Reasonable Fee is a Percentage of the Common Fund.

The preferred method for awarding attorneys' fees to a prevailing plaintiff is to award a percentage of the common fund created by the litigation. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). Under the FLSA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. *See* 29 U.S.C. § 216(b). In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Plaintiffs' Counsel would receive one-third of the Settlement Fund as attorneys' fees plus reimbursement of out-of-pocket costs and expenses.

It has long been recognized that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine "prevent[s] … inequity" by proportionately spreading payment among those who benefit from the labor of others. *Id.* The ability to spread fees among many persons provides part of the efficiency of the FLSA collective action mechanism.

2

The common-fund methodology applies where a claim would otherwise invoke a fee-shifting statute if the case were tried, like the FLSA does. In 1985, the United States Court of Appeals for the Third Circuit convened a Task Force to develop "recommendations to provide fair and reasonable compensation for attorneys in those matters in which fee awards are provided by federal statute or by the fund-in-court doctrine." *Court Awarded Attorney Fees*, 108 F.R.D. 237, 238 (3d Cir. Task Force, 1985). The Third Circuit Task Force examined "fee-shifting" cases and categorized them as claims where determining the fee "continues to be an adversary proceeding until resolution, *except when a statutory fee case is 'converted' into a fund case by settlement*." *Id.* at 255 (emphasis added). After detailed analysis, "the Task Force recommends that in the traditional common-fund situation *and in those statutory fee cases that are likely to result in a settlement fund from which adequate counsel fees can be paid*, the district court … should attempt to establish a percentage fee arrangement." *Id.* (emphasis added). Thus, a statutory fee-shifting lodestar analysis would apply to a settlement *only* where the settlement fund is inadequate to pay the attorneys' fees, or where the amount of the fee remains adversarial. *See Staton v. Boeing, Co.,* 327 F.3d 938, 967 (9th Cir. 2003) (fees may be awarded as a percentage of a common fund where there is a fee-shifting statute because the parties are expected to negotiate and settle the fees as an element of damages).

The Tenth Circuit has adopted the same approach:

> Fees in common fund cases are extracted from the predetermined damage recovery rather than obtained from the losing party. Thus, common fund fees are neither intrinsically punitive nor designed to further any statutory public policy. Conversely, statutory fees are intended to further a legislative purpose by punishing the nonprevailing party…. Thus, unlike statutory fees, which result in a *shifting* of the fee burden to the losing party, common fund fees result in a *sharing* of the fees among those benefited by the litigation.

*Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 455 (10th Cir. 1988). Consequently, "[a]fter a period of experimentation with the lodestar method the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases." Manual for Complex Lit. (4th Ed.) § 14.121. The *Brown* court, this Court and other courts within this District have observed that fees ranging from 22 to 39 percent of the fund have been deemed reasonable. 838 F.2d at 455 & n.2 (citing cases); *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18) (noting that typical fee award in complex cases is around one-third of common fund); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, *6 (awarding 39% of the common fund and finding it was "within the normal range for a contingent fee award") (citing D. Colo. cases).

The Tenth Circuit, like other Circuits, has expressed "a preference for the percentage of the fund method." *Gottlieb*, 43 F.3d at 483; *see also Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (same). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund 'is less subjective than the lodestar plus multiplier approach,' matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis." *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *5 (D. Colo. Apr. 22) (quoting *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559, *2 (D. Colo. Dec. 22) (quoting *Brown*, 838 F.2d at 484)).

Addressing common fund cases in the statutory fee-shifting context, the Tenth Circuit has held, "although time and labor required are appropriate considerations [in a common fund case], the results obtained may be given greater weight when, as in this case, the recovery was highly contingent and [when] the efforts of counsel were instrumental in

realizing recovery on behalf of the class." *Brown*, 838 F.2d at 456. This Court and other courts within this District have followed the Tenth Circuit's "preference for the percentage of the fund method" and granted motions for fee awards similar to that requested here. *E.g., Crocs Sec. Litig.,* 2014 WL 4670886, at *1 ("Because this is a common fund case and because plaintiffs' fee request is for a percentage of the common fund, the Court will calculate the attorneys' fees using the percentage of the fund approach"); *Lucken Family Ltd. Partnership*, 2010 WL 5387559, *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (*citing, inter alia, Vaszlavik v. Storage Technology Corp.*, 2000 WL 1268824, *4 (D. Colo. Mar. 9) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards" and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable").

The percentage of the fund approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the *efficient prosecution and early resolution* of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d Cir. 2005) (emphasis added) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *25 (S.D.N.Y Nov. 26)). Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"); Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998)

("Hence, under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the class.").

The same incentive does not exist under the so-called "lodestar" approach because the lodestar increases with the number of hours counsel spends, not with the size of the recovery. *Swedish Hosp.*, 1 F.3d at 1268 (under the lodestar approach "attorneys are given incentive to spend as many hours as possible"). Fee awards based on a percentage of the fund thus encourage maximum efficiency with early settlements, whereas the lodestar approach "creates an unanticipated disincentive to early settlements." *Wal-Mart Stores, Inc.*, 396 F.3d at 120 (internal quotation marks omitted); *Swedish Hospital*, 1 F.3d at 1268 (lodestar "encourages significant elements of inefficiency"); Court Awarded Attorney Fees, 108 F.R.D. 237, 248 (1986) (with lodestar approach, "there appears to be a conscious, or perhaps unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar"). In addition to maximizing efficiency for the litigants, "[t]he percentage approach ... saves judicial energy" by removing the incentive for attorneys to file "frivolous motions encouraged by the hourly based method." Silber, 17 Rev. Litig. at 534 (citing Court Awarded Fees, 108 F.R.D. at 246-49).

A second form of judicial efficiency is realized when a fee award is based on a percentage of the fund and that is the avoidance of "the cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions that ... plague the Bench and Bar under" the lodestar approach. Court Awarded Attorney Fees, 108 F.R.D. at 258. Based on the foregoing, the fee requested is appropriately analyzed under the percentage of the fund approach.

**B. The Requested Fee is Reasonable Under the *Johnson* Factors.**

In evaluating the reasonableness of a fee request, courts in the Tenth Circuit look at the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Brown*, 838 F.2d at 454-55; *see also Gottlieb*, 43 F.3d at 482 (*Johnson* factors "for statutory fee cases apply equally to percentage fee awards in common fund cases."). Rarely are all these factors relevant, particularly in a common fund situation, and the trial court has the discretion to determine which factors to weigh most heavily. *Brown*, 838 F.2d at 456; *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) ("rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation"). Applying these factors here confirms the reasonableness of the requested one-third of the fund.

1. ***Johnson* Factors (2), (3), (9), & (10): the novelty and difficulty of the questions presented; the skill, experience, reputation, and ability of the attorneys; and the "undesirability" of the case.**

Minimum wage lawsuits based on under-reimbursed expenses were rare before Plaintiffs' Counsel's extraordinary efforts on behalf of pizza delivery drivers. These cases provided significant and novel challenges, including favorable decisions on pleading, certification, cognizability of pendent state law claims, and methods of proof. *See, e.g.,*

*Wass v. NPC Int'l, Inc.*, 688 F.Supp.2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim."; "The present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases). Under the Defendants' threats of seeking sanctions in both the *NPC* case and *Smith* v. *Pizza Hut, Inc.,* Case No. 09-CV-01632 WDM-BNB (D. Colo.) *if* their theory proved incorrect, Plaintiffs' Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *Id.* These rulings paved the way for conditional certification of the FLSA claims here, and ultimately this settlement.

Recently, the U.S. District Court for the District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.

> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. *They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.*

*Hackett v. ADF Rest. Invs.,* 2016 U.S. Dist. LEXIS 174775, *11 & 16 (D. Md. Dec. 19) (emphasis added); *see also, e.g., Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *13-14 (S.D. Fla. Aug. 14) ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

Moreover, Plaintiffs' Counsel have extensive experience in wage and hour litigation generally. (Ex. 1, Declaration of Richard M. Paul III ("Paul Decl."), ¶¶ 2-5; Ex. 2, Declaration of Mark Potashnick ("Potashnick Decl."), ¶¶ 3-6). Had Plaintiffs' Counsel not prevailed in this groundbreaking area of the law, the significant relief made available under this settlement would never have materialized for the Plaintiffs here, and pizza delivery drivers would lack any practical or cost-efficient method of proving their claims.

Lastly, these cases have become more and more undesirable because the majority are unprofitable due to arbitration provisions with class and collective action waivers that effectively immunize employers from unlawful wage practices. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of the attorneys, and the "undesirability" of the case, *Johnson* factors (2), (3), (9) and (10) all strongly support the requested fee.

> **2.** ***Johnson* Factors (5), (6), & (8): the contingent nature of the fee, and the amount involved and results obtained.**

When determining the fee award in a common fund case, the most important factors are the contingent nature of counsel's fee, and "the amount involved and the results obtained." *Brown* 838 F.2d at 456 ("a decisive factor in this common fund class action case is the amount involved and the results obtained"). All wage and hour actions pose significant risk to attorneys representing plaintiffs, who incur great expense and may devote thousands of hours of labor, that may yield no return at all. *E.g., Guyton v. Tyson Foods, Inc.*, Case No. 07-cv-00088 (S.D. Iowa Apr. 26, 2012) (complete jury verdict for defendant in donning and doffing case); *Lopez v. Tyson Foods, Inc.*, Case No. 06-cv-459 (D. Neb. May 26, 2011) (same). But the risks were particularly acute in the early pizza delivery driver cases where Plaintiffs' Counsel undertook cases far different from the

typical FLSA case.

Despite the novelty of these claims, Plaintiffs' Counsel obtained exceptional recovery for pizza delivery drivers in their early cases and carried it over to this case. The crux of the task in determining the fee "is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (reversing trial court's reduction of requested fee). The requested fee here is less than Plaintiffs' Counsel's customary contingent fee in wage and hour litigation, which is generally set between 35%-40% of any recovery. (Paul Decl. ¶10; Potashnick Decl. ¶7). And, as explained above, Plaintiff Wilson contracted with Plaintiffs' Counsel for an attorneys' fee of up to 35% of any recovery on a collective basis, after recovery of expenses. (Paul Decl., ¶11; Potashnick Decl. ¶7).

The fact that rulings from other cases – obtained by Plaintiffs' Counsel - may have helped them obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a similar argument, while these prior decisions bolstered Plaintiffs' position, no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial would be expert-intensive and thus costly. Whether a jury would accept the IRS Reimbursement Rate or an expert witness opinion on reimbursement rates remains an unknown. Plaintiffs would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for all Plaintiffs. Further, regardless of the outcome at

trial, post-judgment appeals would be likely.

### 3. *Johnson* Factors (1) & (4): Time and labor expended and preclusion of other work.

The Tenth Circuit has de-emphasized the time and labor component of the *Johnson* factors in common fund cases, and even when considered it "need not be evaluated using the lodestar formulation." *Brown* 838 F.2d at 456. Here, despite the relatively efficient settlement of this case, Plaintiffs' Counsel have spent more than 185 hours litigating this case with no assurance of being paid. (Paul Decl., ¶13, Potashnick Decl., ¶15-16). These hours include time spent investigating the facts; reviewing documents produced by Plaintiffs and Defendants; analyzing Defendants' delivery data; communicating with their clients; negotiating the terms of the settlement and approval papers; creating dynamic computerized damage models; and devising a formula for allocating the common fund among all Plaintiffs. (Paul Decl. ¶13). This work limited Counsel's ability to work on other profitable cases. (*Id.*).

And while Counsel's lodestar does not need to be considered, Plaintiffs' Counsel are not receiving an excessive multiplier on their lodestar. The requested fee here currently reflects a multiplier on Counsel's lodestar of roughly 1.97. (Paul Decl., ¶14; Potashnick Decl., ¶16).[1] This multiplier will be reduced over time as Plaintiffs' Counsel will be required to spend time administering the settlement. Plaintiffs' Counsel have pursued other similar cases on behalf of delivery drivers and received far less than their lodestar in settlements as a result of the size of the case or the defendants' inability to pay, including one pizza

---

[1] Weinhaus and Potashnick has incurred $21,240 in fees to date. (Potashnick Decl. ¶16). Paul LLP has incurred $33,567.5. (Paul Decl., ¶14). Thus $108,333.33 (1/3 of the recovery ($325,000) in this case) ÷ $54,807.50 = 1.97.

franchise that filed bankruptcy just a few months before the trial setting. (Paul Decl., ¶9; Potashnick Decl. ¶17).

Indeed, Plaintiffs' Counsel recently submitted a fee application in a similar under-reimbursement case in this District. *See Drollinger v. Network Global*, Case. No. 16-cv-00304-MSK-NRN, Doc. 206 at 2 (D. Colo 2018). The fee applied for in *Drollinger* equated to a blended hourly rate for Plaintiffs counsel of **$40.67** at the time of the fee application on August 17, 2018. *See id.*

Just as the percentage "in a contingent-fee agreement is not a ceiling upon the fees recoverable under" a fee-shifting statute, *Blanchard v. Bergeron*, 489 U.S. 87, 98 (1989), neither is the lodestar a ceiling on fees in a common fund case, as courts in common fund cases approve fees representing higher multiples of the lodestar than that here. *Barry*, 43 F.3d at 484-85 (reversing District Court's reduction in fee award and reinstating Magistrate Judge's fee award that resulted in lodestar multiplier of between 3.3 and 4.9); *Crocs Sec. Litig.*, 2014 WL 4670886 at *4 (noting that courts in this District have typically awarded multipliers between 2.5 and 4.6, citing cases); *Davis v. Crilly*, 2018 WL 1010941 at *4 (D. Colo. Feb. 22) ("37% of the gross settlement amount . . . is well within the normal range for a contingent fee award.") (collecting cases from this Court); *Mishkin v. Zynex, Inc.,* 2012 WL 4069295, at *2 (D. Colo. Sept. 14) (collecting District of Colorado cases approving lodestar multipliers ranging between 2.5 and 4.6); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (granting multiplier of 3.97 and observing, "multipliers of between 3 and 4.5 have become common.") (citing cases).

This makes good economic sense. Plaintiffs' Counsel should not be penalized for leveraging their hard work in earlier cases to achieve an efficient resolution here. As the

Third Circuit explained, "one purpose of the percentage method" of awarding fees – rather than the lodestar method, which arguably encourages lawyers to run up their billable hours – "is to encourage early settlements by not penalizing efficient counsel.…" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (*citing* Manual for Complex Litigation, § 24.121, at 207, and Newberg on Class Actions, § 14.03, at 14-3 to 14-7). Reducing Plaintiffs' Counsel fee merely because they were able to settle this case early would ignore the stated goal in percentage fee award cases of "ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Id.* "Procuring a settlement … is never a factor that the … court should rely upon to reduce a fee award. To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases." *Id.*

In light of Plaintiffs' Counsel's time in this case—as well as the additional time required going forward—Plaintiffs' Counsel's request for attorneys' fees is reasonable and should be approved.

### 4. *Johnson* Factor (12): Awards in similar cases.

Fee awards of one-third of the common fund are common in FLSA cases, even in more traditional "off-the-clock" and misclassification FLSA claims. *See Whittington*, 2013 WL 6022972 at *6; *Payson v. Capital One Home Loans, LLC*, 2009 U.S. Dist. Lexis 88468, *6-8 (D. Kan. Sept. 24); *Barnwell v. Corrections Corp. of Am.*, Order Approving Settlement Agreement, Case No. 2:08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009); *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008); *Burks v. Bi-State Redevelopment*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91 at 3, ¶8 & Doc. 102, p. 4, ¶9); *DeMunecas v. Bold Food, LLC*, 2010 U.S. Dist. Lexis 87644,

*22-24 (S.D.N.Y. Aug. 23); *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. Lexis 20446, * 20-21 (N.D. Ohio Mar. 8). The prevalence of fee awards of one-third of the common fund in more standard FLSA claims clearly supports a fee award of one-third of the common fund created here.[2]

Plaintiffs' Counsel never put their interests ahead of their clients in negotiating attorneys' fees in this case. Rather, by agreeing to work on a contingent fee basis, Plaintiffs' Counsel's interests have always been directly aligned with the interests of their clients to maximize their recovery. (Paul Decl., ¶12). Moreover, named Plaintiff Wilson contracted with Plaintiffs' Counsel for fees of 35% of any recovery on a collective action basis, after recovery of expenses, and 40% of any recovery on an individual basis. (Paul Decl., ¶11; Potashnick Decl., ¶7). Further, every single opt-in Plaintiff designated Plaintiff Wilson to enter into an agreement with Plaintiffs' Counsel regarding payment of attorneys' fees in their Consent to Join Form. (Paul Decl., ¶11). Given the settlement here, Plaintiffs' Counsel agreed to reduce their fees to one-third of the Settlement Fund (less than their contractual right).

## II.  Plaintiffs' Costs and Expenses are Recoverable from the Fund

"Expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable" in a class action. *Chalmers v. City of L.A.,* 796 F.2d 1205, 1216 (9th Cir. 1986), *reh'g denied and opinion amended*, 808 F.2d 1373 (1987). Plaintiffs' Counsel have incurred $8,365.87 in expenses prosecuting this case. (Paul Decl. ¶22; Potashnick Decl., ¶18). These expenses are the type of expenses charged to hourly

---

[2] Fee awards of one-third of a common fund are also commonly awarded in this District in non-FLSA claims. *See, e.g., Crocs Sec. Litig.*, 2014 WL 4670886 at *3 (noting approval of fees up to 1/3 of the settlement fund); *Belote v. Rivet Software, Inc.*, 2014 U.S. Dist. LEXIS 110684, *12-14 (D. Colo. Aug. 11, 2014) (approving 1/3 fee award).

paying clients, including expenses for online research, travel, copying and printing, and postage for mailings to the class.

### CONCLUSION

Plaintiffs' Counsel's request for one-third of the common fund as an attorneys' fee, plus reimbursement of their costs and expenses, is amply supported by the applicable legal standard and the excellent result Plaintiffs' Counsel achieved for the class.

Dated: September 28, 2018                    Respectfully submitted,

**PAUL LLP**                                  **WEINHAUS & POTASHNICK**
*/s/ Richard M. Paul III*                     Mark A. Potashnick (admitted in D. Colo.)
Richard M. Paul III (admitted in D. Colo.)    11500 Olive Boulevard., Suite 133
601 Walnut Street, Suite 300                  St. Louis, Missouri 63141
Kansas City, Missouri 64106                   Telephone:   (314) 997-9150
Telephone:   (816) 984-8100                   markp@wp-attorneys.com
Rick@PaulLLP.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on September 28, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Richard M. Paul III*