IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-00109-RM-MEH

KAYLEE WILSON, individually and on behalf of similarly situated persons,

    Plaintiff,

v.

DFL PIZZA, LLC;
MINUTEMAN PIZZA, LTD.;
TRI-CITY PIZZA, INC.; and
PINNACLE PIZZA, INC.,

    Defendants.

---

## ORDER

---

    This action was brought on behalf of delivery drivers at Defendants' Domino's Pizza stores who were allegedly under-reimbursed for the automotive expenses they incurred such that their wages were reduced below the federal minimum wage. This matter is now before the Court on (1) the Joint Renewed Motion to Approve Collective Action Settlement with Memorandum in Support (the "Renewed Motion") (ECF No. 64), with incorporates by reference the parties' previous Motion for Settlement (ECF No. 58) which was denied without prejudice; and (2) Plaintiffs' Application for Fees, Costs and Expenses (the "Application") (ECF No. 61).[1] These filings seek approval of the parties' settlement agreement of this action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and an award of attorney's fees and costs to Plaintiffs' attorneys. Upon consideration of the Renewed Motion and Application, the

---

[1] This was also denied without prejudice, but the Court instructed the Clerk to refile the Application upon the filing of the Renewed Motion.

court record, and the applicable rules and case law, and being otherwise fully advised, the Renewed Motion and Application are GRANTED.

## I. BACKGROUND

Named Plaintiff Kaylee Wilson was a delivery driver at one of Defendants' Domino's Pizza stores. As relevant here, Plaintiff Wilson, individually and on behalf of similarly situated persons, filed this FLSA collective action alleging Defendants under-reimbursed their delivery drivers for the automotive expenses they incurred to such an extent that their unreimbursed business expenses reduced their wages below the federal minimum wage. Pursuant to the parties' stipulation, the Court conditionally certified this case as a collective action to facilitate its potential settlement. After notice of this action, 215 of Defendants' delivery drivers, including Plaintiff Wilson, filed opt-in forms.

The parties engaged in settlement discussions and reached a settlement after a full day of mediation with an experienced employment mediator and subsequent direct negotiations. Plaintiffs' attorneys disseminated a notice of the settlement terms to all Plaintiffs, Plaintiffs were afforded a month to object to the settlement, and no Plaintiff has objected. Plaintiffs now seek court approval of their proposed settlement via the Renewed Motion and Application, providing publicly available, unredacted copies of the "Settlement and Release Agreement" and "Supplemental Settlement Agreement and Release."

## II. LEGAL STANDARD

### A. Collective Action Settlement

Courts have held that settlements of FLSA actions such as this one must or may require court approval.[2] *Cooper v. OFS 2 Deal 2, LLC*, No. 15-cv-01291-RM-NYW, 2016 WL

---

[2] The issue of whether an FLSA settlement requires court approval has not yet been settled by the Tenth Circuit. The Court also recognizes the decisions in this District are not uniform regarding any requirements for approval of

1071002, at *2 (D. Colo. Mar. 17, 2016); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Baker v. Vail Resorts Mgmt. Co.,* Case No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014). Approval may be granted when: (1) the FLSA settlement is reached as a result of bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Cooper*, 2016 WL 1071002, at *2; *Lynn's Food Stores*, 679 F.2d at 1354; *Baker*, 2014 WL 700096, at *1. In addition, the "Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power." *Baker*, 2014 WL 700096 at *2. To determine whether the settlement agreement complies with the FLSA, the court evaluates the following factors: "(1) the presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA." *Baker*, 2014 WL 700096 at *2 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)). Finally, before approval of any settlement may be had, final collective action certification may be required, as well as notice to opt-in plaintiffs of any settlement and an opportunity to object. *Ostrander v. Customer Engineering Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2018 WL 1152265, at *2 (D. Colo. Mar. 5, 2018).

### B. Attorney's Fees under the FLSA

The FLSA requires any judgment to include an award of reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The Court has discretion to determine the amount and

---

settlement agreements brought under the FLSA.

reasonableness of the fee to be awarded. *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1173 (D. Colo. 2018).

The two primary methods for determining attorney-fee awards in common-fund cases are the percentage-of-the-fund method and the lodestar method. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017) (discussing fee awards in class actions). The Tenth Circuit has expressed a preference for the percentage-of-the-fund approach in common fund cases. *Id.* To determine the appropriate percentage, the Tenth Circuit considers the twelve factors first announced in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974) (commonly called the *Johnson* factors). Those factors are:

> the time and labor required, the novelty and difficulty of the question presented by the case, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, any time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases.

*Chieftain Royalty*, 888 F.3d at 458 (quoting *Gottlieb v. Barry*, 43 F.3d 474, 482 n.4 (10th Cir. 1994)). In addition, courts frequently conduct a lodestar crosscheck to ensure the reasonableness of the percentage that attorneys seek. 5 W. Rubenstein, *Newberg on Class Actions* § 15:85 (5th ed. 2019); *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018).

### III. ANALYSIS

#### A. The Renewed Motion

In the Renewed Motion, Plaintiffs rely heavily on *Nelson v. Mountainside Pizza, Inc.*, No. 16-cv-02825-RM-NRN. Such reliance was not misplaced due to the substantial similarities

between *Nelson* and this action. Thus, for much of the same reasons given in *Nelson*, the Court finds approval may be had in this case.

   **1. Final Certification**

The FLSA provides "a private right of action for one or more employees to bring an action against their employer to recover unpaid wages or overtime compensation on behalf of himself or themselves and other employees similarly situated." *In re Chipotle Mexican Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *1 (10th Cir. Mar. 27, 2017) (quotation marks and citation omitted). Under the two-step "ad hoc" approach, "a court typically makes an initial notice stage determination of whether plaintiffs are similarly situated," applying a fairly lenient standard. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (quotation marks and citation omitted). Then, after discovery, the court makes a second similarly-situated determination, applying a stricter standard. *Thiessen*, 267 F.3d at 1102-03. Under that standard, a court considers "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Thiessen*, 267 F.3d at 1103 (quotation marks and citation omitted).[3]

Plaintiffs request, and Defendants conditionally consent to, a final collective certification of the collective action members. In support of their request, Plaintiffs rely on several other pizza delivery driver cases which have been certified under Fed. R. Civ. P. 23 or under the FLSA for settlement purposes. *See, e.g., Gassel v. American Pizza Partners, L.P.*, No. 14-cv-00291-PAB-NYW (D. Colo. filed Aug. 24, 2016) (final certification under FLSA for purposes of

---

[3] *Thiessen* was an action filed under the Age Discrimination in Employment Act ("ADEA"), which borrows the opt-in mechanism of the FLSA. 267 F.3d at 1102. A fourth factor identified in *Thiessen*, "whether plaintiffs made the filings required by the ADEA before instituting suit," 267 F.3d at 1103, is not applicable to an FLSA action.

5

collective action settlement); *Bass v. PJCOMN Acq. Corp.*, No. 09-cv-01616-REB-MEH, 2011 WL 2149602 (D. Colo. June 1, 2011) (certification under Rule 23). In addition, Plaintiffs contend the facts which support certification in those cases support certification in this case as well, e.g., that the delivery drivers were subject to the same delivery driver reimbursement policy and were reimbursed similar set amounts of automobile expenses per delivery. Upon review of Plaintiffs' contentions, the record, and prior cases which have found final certification appropriate, the Court agrees. Accordingly, the Court finds final collective action certification may be had.

  2. **The Settlement**

   a) *Bona Fide Dispute*

The record supports that a bona fide dispute exists between the parties as to liability and damages on Plaintiffs' claims based on Defendants' alleged actions.

   b) *Fair and Reasonable*

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Baker*, 2014 WL 700096, at *2. The Court considers several factors when evaluating the fairness of a settlement, including: "(1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Baker*, 2014 WL 700096, at *2 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)); *see Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (evaluating fairness of agreement under Fed. R. Civ. P. 23(e)(1)(C)). Plaintiffs contend

such requirements are all met. The Court agrees.

First, the Court's review of the record shows the $325,000.00 settlement was fairly and honestly negotiated by experienced attorneys with the assistance of an experienced mediator. Next, the nature of the claims, and associated legal and factual questions concerning liability and any damages, placed the ultimate outcome of the litigation in doubt. Third, in light of the disputes between the parties and the likelihood of expensive and lengthy litigation, the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation. Finally, it is the judgment of the parties, and their experienced attorneys, that the settlement is fair and reasonable. The parties represent this determination was made after the parties reviewed the relevant data Defendants produced, and none of the 215 Plaintiffs who received written notice of the settlement (including estimated awards and settlement terms) objected. Thus, on this record, the Court finds the settlement to be fair and reasonable.

### c) *Whether the proposed settlement undermines the purpose of the FLSA*

Based on the record, the Court agrees with Plaintiffs that the proposed settlement does not undermine the purpose of the FLSA. Here, the record shows that current and former delivery drivers employed by Defendants received adequate notice of this action; it is unlikely Plaintiffs' circumstances will reoccur considering this litigation; and there is no history of non-compliance by Defendants.

### d) *The Service Award*

Plaintiffs also request a service award of $2,500 to Plaintiff Wilson because, as her attorneys advise, she was instrumental in bringing and pursuing this case, assisted the attorneys in investigating the case and furthering the litigation, and participated in the settlement efforts, including the mediation. Based on the record, the Court finds Plaintiff Wilson's actions provided

substantial benefit to the collective action members in this case and the incentive award is appropriate to compensate her for the work performed. *See Chieftain Royalty Co.*, 888 F.3d at 468 (recognizing that "courts regularly give incentive awards to compensate named plaintiffs for the work they performed").

    *e)*  *Notice and Opportunity to Object*

 The Court finds the record shows the collective action members were provided adequate notice of this settlement and its terms and given an opportunity to object. Plaintiffs' attorneys advise no one has objected.

 **B. The Application for Attorney's Fees and Costs**

 As stated, the Court has discretion to determine the amount and reasonableness of any fee to be awarded. *Davis,* 292 F. Supp. 3d at 1173. Here, Plaintiffs' attorneys seek an award of one-third (1/3) of the settlement amount, i.e., $108,333.33,[4] plus $8,365.87 in costs. Plaintiffs contend the award is appropriate under a percentage-of-the fund analysis, after applying the *Johnson* factors. Plaintiffs also contend that a lodestar crosscheck need not be had but, even if considered, a lodestar multiplier of approximately 1.97 is not excessive. The Court mainly agrees.

    **1. Percentage-of-the-fund and *Johnson* factors**

     *a)*  *Time and Labor Required and Preclusion of Other Work*

 Plaintiffs' attorneys represent they have spent more than 185 hours litigating this case on a contingency basis which limited their ability to work on other profitable cases. Their work included investigating facts, reviewing documents, analyzing data and creating computerized damages models, communicating with clients, negotiating the terms of the settlement and

---

[4] $325.000 x 1/3.

approval papers, and devising a formula for allocating the common fund among Plaintiffs. Given the substantial time and effort Plaintiffs' attorneys invested in this case, which precluded them from other work, the Court finds these factors weigh in favor of the fee award requested.

### b) *Novelty and Difficulty of Questions; the Skill Required and Experience of Counsel*

Plaintiffs' attorneys represent these delivery types of cases provide significant and novel challenges on issues which remain untested, e.g., no controlling case law on the "reasonable approximation" standard to measure damages. These cases would also involve a battle of expensive vehicle costing experts. This factor weighs in favor of the requested fee award. And, as shown by the Declarations, Plaintiffs' attorneys have extensive experience litigating wage and hour class and collective actions, including actions like this one, and have the ability to handle the issues. Thus, the record shows the attorneys have the requisite skill and experience to properly represent Plaintiffs and pursue this case, including structuring any settlement to provide meaningful recovery for them. Thus, these two factors also weigh in favor of the fee award.

### c) *The Customary Fee; Whether the Fee is Fixed or Contingent; and Awards in Similar Cases*

The requested one-third of the common fund is within the customary fees and awards in similar cases in this District. *E.g., Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014); *Aragon v. Clear Water Prods. LLC*, 2018 WL 6620724, at *4. Plaintiffs' attorney's Declaration states the attorneys agreed to work on a contingent fee basis which, as relevant here, calls for fees up to 35% of the recovery, after recovery of expenses, if the case is resolved on a collective basis. Thus, the requested fee is within the contracted amount to which Plaintiff Wilson agreed. And, Plaintiffs' attorneys ran a significant risk of nonpayment due to the contingent nature of the fee agreement. These factors

weigh in favor of the fee award. *Farley,* 2014 WL 5488897, at *4; *Aragon*, 2018 WL 6620724, at *6 & n.4.

### d) Any Time Limitations and the Nature and Length of the Professional Relationship

Plaintiffs did not address these two factors, so the Court assumes there were no time limitations imposed by the client or circumstances in this case and the parties had no prior professional relationship. Thus, the Court finds these two factors inapplicable to its determination. *Farley*, 2014 WL 5488897, at *4.

### e) Amount Involved and Results Obtained

"In a common fund case…although time and labor required are appropriate considerations, the ninth *Johnson* factor-the amount involved and the results obtained-may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Brown v. Phillips Petro. Co.*, 838 F.2d 451, 456 (10th Cir. 1988). In this case, Plaintiffs' attorneys recovered $325,000.00 for 215 Plaintiffs where there are serious questions concerning liability and damages. Plaintiffs' attorneys' experience and background with these types of wage and hour cases were clearly instrumental in the efficient resolution and recovery on behalf of Plaintiffs. Thus, this factor weighs strongly in favor of the fees award requested.

### f) The Undesirability of the Case

Plaintiffs contend these types of cases are becoming more and more undesirable because the majority are unprofitable due to arbitration provisions with class and collective actions waivers. There were, however, apparently no such waivers in this case. Thus, while such fact may be relevant in a case in which any such provisions (or their existence) were at issue or vigorously litigated, the Court finds this contention, without more, unpersuasive here. That is

not to say, however, that the other factors which the Court finds weigh in favor of the fee award requested are insufficient to support the award in this case.

## 2. Lodestar Crosscheck

Plaintiffs' attorneys contend a lodestar crosscheck does not need to be considered. The Tenth Circuit has stated the "'time and labor involved' factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors, the basis of which is clearly reflected in the record." *Brown*, 838 F.2d at 456. In footnote 3, however, the Tenth Circuit stated, "even though the 'time and labor involved' factor does not necessarily anchor the determination of reasonable fees in the common fund situation, it is a relevant factor…." *Brown*, 838 F.2d at 456 n.3. Thus, the Court conducts a crosscheck.

Here, the highest rate charged was $600.00 per hour, and it is slightly higher than the rates customarily charged in this District, *see Aragon*, 2018 WL 6620724, at *7. Using the various rates charged by Plaintiffs' attorneys results in a lodestar of 1.98. If the Court were to reduce the highest rate to $550.00 per hour, this would result in a lodestar of 2.03. This would still be within the range of lodestar multipliers that have been approved in other cases in this District. *See Mishkin v. Zynex, Inc.,* No. 09-CV-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases in this District approving lodestar multipliers ranging between 2.5 and 4.2); *Davis*, 292 F. Supp. 3d at 1174 (approving lodestar multiplier of 1.77).

## 3. Summary

In summary, the Court finds an award of one-third of the common fund is warranted in this case. In addition, the Court finds the costs requested reasonable in this instance, i.e., that Plaintiffs' attorneys are also bearing the costs associated with mailings for distribution of

payments, etc. and are not seeking a reduction from the common fund to pay a claims administrator for such tasks.[5]  Therefore, the Court approves the Application.

**C. The Motion to Restrict**

The final motion pending is Plaintiffs' unopposed "Motion for Leave to File Exhibit to Plaintiffs' Motion for Settlement as Level 2 Restricted" (ECF No. 65).  The exhibit at issue is a copy of the written notice Plaintiffs' attorneys sent to all Opt-In Plaintiffs concerning this action.  Upon consideration of D.C.COLO.LCivR 7.2, and the record, the Court finds Plaintiffs have shown the requirements for a Level 2 restriction are met as to the attorney-client communication which they seek to restrict.  Accordingly, this motion is granted.

**IV.    CONCLUSION**

Based on the foregoing, it is **ORDERED**

(1) That the Joint Renewed Motion to Approve Collective Action Settlement with Memorandum in Support (ECF No. 64) is GRANTED;

(2) That Plaintiffs' Application for Fees, Costs and Expenses (ECF No. 61) is GRANTED;

(3) That the Motion for Leave to File Exhibit to Plaintiffs' Motion for Settlement as Level 2 Restricted (ECF No. 65) is GRANTED and the Clerk shall maintain a Level 2 restriction on ECF No. 66;

(4) That the Court retains jurisdiction over the Settlement and Release Agreement and associated Supplemental Settlement Agreement and Release, including the consummation, performance, administration, effectuation, and enforcement of these agreements which are approved by this Order;

---

[5] If it were otherwise, the Court would seek further documentation and information concerning such costs which Plaintiffs' attorneys seek.

(5) That this action is dismissed with prejudice against Defendants, without costs to any party, except as otherwise expressly provided in the settlement agreements referenced in paragraph (4) above and as approved by the Court; and

(6) That the Clerk is directed to close this case.

DATED this 10th day of July, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge